**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | **FOR PUBLICATION** |
| MADHU GROVER, | Chapter 7 |
| Debtor. | Case No. 22-11730 (MG) |
| JAMES BUSCHE, | |
| Plaintiff, | |
| v. | Adv. Pro. Case No. 23-01199 (MG) |
| MADHU GROVER, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER DENYING MOTIONS FOR**
**DECLARATORY JUDGMENT**

*A P P E A R A N C E S*:

BRADSHAW LAW GROUP P.C.
*Attorneys for Plaintiff James Busche*
307 East 89th St., Suite 4C
New York, NY 10128
By:    Diane Bradshaw, Esq.

WEINBERG ZAREH MALKIN PRICE LLP
*Attorneys for Defendant Madhu Grover*
45 Rockefeller Plaza, 20th Fl.
New York, NY 10111
By:    Adrienne Woods, Esq.

ATTORNEY GENERAL OF NEW YORK
*Counsel for New York State Department of Labor*
28 Liberty St., 15th Fl.
New York, NY 10005
By:    Letitia James, Esq.
       Karen Cacace, Esq.
       Young Lee, Esq.
       Seth Kupferberg, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is plaintiff James Busche's ("Busche" or "Plaintiff") motion

("Motion," ECF Doc. # 21[1]) seeking a declaratory judgment (1) that a judgment entered against

debtor-defendant Madhu Grover ("Grover" or "Debtor") in a New York State court action

between Busche and Grover has preclusive effect (collateral estoppel or *res judicata*); (2)

denying with prejudice the dischargeability of Busche's claim against Grover; (3) providing that

such a declaratory judgment "also inure to the benefit of the parties in interest in these Chapter 7

proceedings"; (4) referring Grover to "further criminal prosecution"; (5) awarding Busche costs

incurred in this action; and (6) granting such other relief as the Court deems just, equitable, and

proper.  (Motion ¶ 5.)  Grover filed a response ("Response," ECF Doc. # 27) and Busche filed a

reply ("Reply," ECF Doc. # 28).  The New York State Department of Labor ("DOL") also filed a

motion ("DOL Motion," ECF Doc. # 25, exhibits and accompanying declaration at ECF Doc. #

26) in this adversary proceeding, writing both in support of Busche's Motion and separately

seeking a declaratory judgment in the Debtor's main bankruptcy proceeding that would declare

that (1) the validity and amount of its (the DOL's) claim would be determined in a separate,

pending state proceeding; and that (2) the DOL remains free to file an adversary complaint to

have its claim found non-dischargeable.

For the following reasons, the Court **DENIES** the DOL's Motion and **DENIES** Busche's

Motion.

---

[1]     Busche attaches the following exhibits to his Motion: Rule 2004 deposition transcripts of Grover, taken on
August 7 and October 10, 2023 ("Ex. A"); the transcripts of depositions of Grover taken on June 5, 2024 and June
13, 2024 ("Ex. B"); the record of the New York State action (discussed *infra* on appeal ("Ex. C"); the verified
complaint in the New York State action ("Ex. D"); an order to show cause from the New York State action, dated to
August 15, 2018, with attachments ("Ex. E"); an affidavit filed by James Busche in support of a temporary
restraining order he sought against Morgan Stanley in 2014 ("Ex. F"); the January 29, 2018 report of the special
referee ("Referee Report") in the New York State court action ("Ex. G"); the August 15, 2019 Order entered in favor

# I.    BACKGROUND

## A.  New York State Court Action

The following facts, concerning solely the leadup to and aftermath of the August 15, 2019 New York State court order Busche herein argues has preclusive effect, are drawn from the Motion and related exhibits.  Contested facts are noted as such.

On or around July 6, 2014, Busche filed a complaint against Madhu Grover, Vijiya Grover (Madhu's mother), and Manish Shah in the Supreme Court for the State of New York. (Motion Ex. D.[2])  In it, he detailed his and Madhu Grover's tumultuous relationship: they met on a plane in 2005 and began a long-distance relationship shortly thereafter, despite that Ms. Grover was married to Manish Shah ("Shah") at the time.  (*Id.* ¶ 19; Ex. J (Shah-Grover marriage certificate); Ex. L at 44:16–45:3 (detailing the start of Busche's and Grover's relationship).) When they met, Busche thought that Grover was a successful financial professional, and that she had her own assets which she invested and managed; this was not the case.  (Ex. D ¶ 33.)  In 2006, Busche moved to Hong Kong, and Grover and her daughter with Shah, Ashna Shah, followed him shortly thereafter.  (*Id.* ¶ 22.)  Around the same time, Grover suggested to Busche that he transfer his money to her so that she could manage it for him; he agreed to do so, and subsequently transferred between $3 to $5 million to Grover, which she invested in a now-defunct hedge fund and then lodged in various Morgan Stanley accounts under her and her mother's name.  (Motion ¶ 29.)  In 2007, Grover showed Busche some divorce papers and told

---

of Busche against Grover by the New York State court ("Aug. 19, 2019 Decision") ("Ex. H"); the Hong Kong certificate of marriage between Busche and Grover ("Ex. I"); the New York marriage license of Manish Shah and Grover ("Ex. J"); a transcript of the November 10, 2015 hearing on jurisdictional issues in the New York State court action, held before Justice Ellen F. Gesmer ("Ex. K"); a partial transcript of a ruling issued orally by Justice Gesmer on February 22, 2016 ("Ex. L");  the November 14, 2018 decision and order of Justice Michael Katz confirming the Referee Report ("November 14, 2018 Decision") ("Ex. M"); and the Appellate Division's February 20, 2020 order affirming Justice Katz's November 14, 2018 Decision ("Feb. 20, 2020 Decision") ("Ex. N").

[2]        Documents referred to as "Exhibits" are all exhibits to Busche's Motion.

3

him she was getting a divorce from Shah. (Ex. L at 45:7–9.) Busche and Grover were married in Hong Kong on April 30, 2009. (Ex. I.) During their time together, Busche was the sole source of financial support for Grover and her daughter, and Busche paid for Ashna Shah's private and boarding school tuition from 2006 through 2012. (Ex. D ¶ 34; Motion ¶ 31.) Busche and Grover's relationship deteriorated beginning in 2012, and in the fall of 2013, Busche suggested to Grover that they divorce—at which time, Grover told Busche that they were not legally married since she had never divorced Shah. (Ex. D ¶ 38.) That fall, Busche also asked Grover to return the money she had supposedly invested on his behalf; Grover said she would do so, but never did. (*Id.* ¶¶ 39–44.)

Busche brought several causes of action against Grover in New York State court: for (1) a declaration of the nullity of their void marriage, (2) annulment of their marriage, (3) absolute divorce, (4) constructive trust, (5) unjust enrichment, (5) fraudulent misrepresentation, and (6) fraudulent conveyance under the New York Debtor and Creditor Law. (Ex. D ¶¶ 47–89.)

Vijaya Grover could not be served and was dropped from the case. (Motion ¶ 33.)

On November 10, 2015, a hearing was held before the Hon. Ellen F. Gesmer on the question of the state court's jurisdiction over Madhu Grover. (Ex. K.) The transcript of that hearing and of one subsequently conducted on February 22, 2016 (Ex. L) indicate that Grover filed more than one motion to dismiss. (*See* Ex. L at 41:6–15 ("I now deny those motions to dismiss and find that I have jurisdiction.").) In ruling that she had jurisdiction over Grover, Justice Gesmer noted that she found both Grover and Shah "totally incredible" because both had lied repeatedly about basic facts, including on the stand, and that she found Grover wholly lacking credibility by contrast. (*Id.* at 41:22–42:19.)

The case was eventually assigned to Justice Michael Katz of the New York State

Supreme Court.  (Motion ¶ 36.)  Both Grover and Shah failed to answer Busche's state court

complaint and Grover, for some unknown period of time, failed to appear at scheduled hearings.

(*Id.*)  Busche filed a motion for default judgment against both Grover and Shah (this motion is

not in the record before the Court).  (*Id.*)  While a default judgment was eventually entered

against Shah (*see* Ex. C at 18 (noting that Justice Katz entered default judgment against Shah)[3]),

Grover did appear *pro se* on the return date for the motion for default and was ordered to submit

to an examination before trial.  (*Id.*)  As best as this Court can tell, no default judgment was ever

entered against Grover in these state court proceedings.[4]

On April 4, 2017, Justice Katz referred Busche's case to a special referee ("Referee") "to

hear and report on the appropriate division of assets, including $3,000,000 allegedly deposited by

Plaintiff James Busche into a joint account held by plaintiff and defendant Madhu Grover and for

an assessment of damages against co-defendant Manish Shah based on his failure to serve an

answer and/or appear in this action."  (Ex. C at 351.)  The referral order did not state that the

Referee was to find liability, nor did it state that a liability determination had already been made.

In July 2017, Busche moved for an order amending the order of reference to expand the

scope of the Referee's hearing to include Busche's first, fourth, fifth, sixth and seventh causes of

action (which included unjust enrichment, fraudulent misrepresentation, and fraudulent

conveyance, *see* Ex. D).  (Ex. C at 25 (transcript of November 7, 2018 hearing before Justice

Katz).)  On July 14, 2017, Justice Katz denied this request without prejudice because he never

---

[3]     The default judgment entered against Shah does not appear in the record before the Court.
[4]     The fact that Justice Katz received motions for default judgments against both Grover and Shah, but only granted it as to Shah, strongly indicates that no default judgment was ever entered against Grover.  *See* Ex. C at 26–27.

received proof of service, and because Busche and/or his attorney did not appear at the return date. (*Id.*)

Hon. Jeffrey A. Helewitz served as the Special Referee in this case. (Ex. C at 75.) He held a hearing from January 8–9, 2018, at which Busche was represented by counsel and Grover appeared *pro se*. (*Id.* at 74.) The two-day hearing focused exclusively on the flow of funds between Busche and Grover. It did not touch on liability, the validity of Busche and Grover's marriage, fraud, or any other substantive claim Busche made out against Grover. (*See id.* at 75–211 (transcript of hearing before the Referee).)

The Referee wrote a fourteen-page report and recommendation ("Report"). After summarizing the testimony presented at the trial, he cabined his Report with crucial qualifiers:

> At the outset it must be noted that there are several problems associated with this reference. In the first place, **there has been no showing of liability** or, if such a finding has been made, it has not been presented to the undersigned Special Referee, either by the referring judge or the parties themselves. In the second place, **since several different claims have been asserted, each one having a different standard with respect to damages, the undersigned Special Referee has to assume which standard is the most appropriate <u>without knowing which claim prevailed</u>.** In the third place, the parties indicated that there has been no financial discovery in this matter, **rendering the documents provided insufficient, on their own, to support any claim**; however, no further discovery was permitted by the referring judge.

(Ex. G at 10 (emphasis added).) The Referee concurred in Justice Gesmer's conclusion that Grover "totally lacked credibility" whereas Busche was "credible." (*Id.* at 10.) The Referee found that Grover had funneled Busche's money into several accounts over which Grover had sole control by the spring of 2014. (*Id.* at 11–13.) The Referee then discussed the burden of proof necessary for Busche to meet:

> As indicated by plaintiff, the appropriate burden of proof in this matter is a preponderance of the evidence, at least for claims of fraud (*Imaging Intl. v. Hell Graphic Sys., Inc.*, 17 Misc. 3d 1123 (Sup. Ct., NY County 2007)) and unjust enrichment (*Miglia v. Fridman*, 2017 NY Misc. Lexis 1525 (Sup. Ct. Rockland

> County 2017)) [sic], two of the causes of action indicated by plaintiff as forming
> part of his complaint against Madhu.  The undersigned Special Referee believes
> that plaintiff has met this burden, at least with respect to the over $1.6 million that
> Madhu transferred out of the Morgan Stanley account in March of 2014 . . . . [T]he
> Morgan Stanley account, which the undersigned Special Referee believes was
> funded by the Montgomery Partners' account, based on plaintiff's credible
> testimony and Madhu's incredibly [sic] testimony, contained $1,795,502.63 at the
> time that Madhu depleted it in March of 2014, the exact time that plaintiff testified
> that he lost all access to the accounts' information.  Hence, plaintiff is entitled to a
> judgment as against Madhu in the amount of $1,795,502.63.

(*Id.* at 13–14.)  The Court does not read this passage to mean that the Special Referee found, by a preponderance of the evidence, that Grover committed fraud or that Busche succeeded on any one of his claims.  This is because the Referee *could not rule on liability*—liability determinations were not within the scope of his referral.  Regardless of his delegated powers, the Referee had also previously pointed out that he had not been informed of any finding of liability, and declined to expressly state that Grover was liable on a specific count.  Moreover, the case the Referee cites for the standard of proof applicable to fraud claims discusses the burden plaintiffs must bear to show *damages* caused by fraud, further suggesting that the Referee intended only to make a finding on the losses sustained by Busche, and not on the merits of his underlying claims against Grover.  *See Imaging Int'l v. Hell Graphic Sys., Inc*., 17 Misc. 3d 1123(A) (Sup. Ct. 2007) ("It is a long-standing rule that a plaintiff must prove its *losses caused by fraud* by a preponderance of the evidence.") (emphasis added).  The most sensible reading of this passage is that the Referee assumed without deciding that there was *some* liability for the sake of determining damages, and since he needed to apply some standard of proof to determine of damages, he adopted the evidentiary bar used *to prove damages* in fraud claims and many other civil cases in New York—a preponderance of the evidence.

The Referee recommended that judgment be entered against Grover in Busche's favor in the amount of $1,795,502.63 with prejudgment interest, and that no damages be assessed against

Shah. (Ex. G at 15.) Again, the Referee did not specify on which counts these damages should

be awarded, nor did he indicate anywhere that he found Grover liable on a fraud count or any

other of Busche's claims against her. The Referee did not recommend assessing damages

against Shah. (*Id*. at 14–15.)

On August 15, 2018, Busche's attorney filed a motion seeking entry of an order to show

cause that Grover is "liable to plaintiff due to either (a) the existence of a constructive trust as set

forth in plaintiff's fourth cause of action, (b) unjust enrichment, as set forth in plaintiff's fifth

cause of action, or (c) fraudulent misrepresentation, as set forth in plaintiff's sixth cause of

action"; and "[m]odifying the Referee's report by increasing the award of damages against

GROVER to the sum of $5,434,541.67 . . . plus statutory interest," or, in the alternative,

"confirming the Referee's Report and Recommendations to the extent of awarding damages

against MADHU GROVER in the sum of $1,795,502.63 plus statutory interest"; and, "[i]n the

alternative" (is it not clear as to what) "declaring the nullity of a void marriage between plaintiff

and GROVER . . . [and] awarding 100% of the marital property to plaintiff"; and rejecting the

Report's conclusion that Shah owed no damages. (Ex. E at 2–3.) In an affirmation

accompanying the proposed order to show cause, Busche's attorney argued that Grover defaulted

since she did not answer the complaint and that the allegations in Busche's state court complaint

should therefore be admitted. (*Id.* at 8.) In the alternative, he argued that "the testimony and

documentary evidence presented at the jurisdiction hearing before Justice Gesmer and the

hearing before Referee Helewitz are more than sufficient to make a finding of liability on"

Busche's fourth, fifth, and sixth causes of action. (*Id.*)

Justice Katz heard argument on the order to show cause on November 7, 2018. (Ex. C at

19 (transcript of hearing).) Grover appeared with counsel; Busche's attorney appeared, but

without his client.  (*Id.* at 21.)  Justice Katz pointed out that he had previously refused to expand the scope of the referral order.  (*Id.* at 25.)  He also stated that he was "sure [his] order of reference could have been more clear because [the order] didn't reference any of the causes of action.  I just sent it for a hearing on the issue of how the assets should be allocated.  I would have appreciated if there was some confusion, which apparently there was, for someone to ask me to issue a clarifying order.  But it seems ridiculous after the hearing now that I should just grant a do-over of the whole thing and make everybody come back for another hearing just so I could write the order slightly differently."  (*Id.* at 31.)

On November 14, 2018, Justice Katz entered an order granting in part Busche's motion, but "only to the extent of confirming the Report of the Special Referee dated January 29, 2018, as this Court finds that the Referee's findings are supported by the hearing record . . . . Accordingly, the Clerk may enter a money judgment in favor of plaintiff James Busche and against defendant Madhu Grover in the amount of $1,795,602.63, together with statutory interest . . . .  The motion is otherwise denied."  (Ex. C at 14.)  Justice Katz declined to expand the scope of the referral to include Busche's causes of action, and again did not specify the grounds on which Grover was liable.  A judgment based on Justice Katz's November 14 order was entered on August 15, 2019.  (Ex. H.)

Grover appealed the November 14 order.  (Ex. C at 8.)  The Appellate Division of the Supreme Court of New York unanimously denied her appeal on February 20, 2020 and affirmed Justice Katz's order.  (Ex. N.)  The Appellate Division's order did not discuss liability.

According to Busche, he has made repeated attempts at collection over the years, "only to find that funds had been transferred each time an account was identified."  (Motion ¶ 42.)

### B.  Grover's Bankruptcy, Busche's Complaint

Grover filed for bankruptcy under Chapter 7 on December 31, 2022.  (Motion ¶ 3.)  A number of adversary proceedings have commenced targeting the Debtor for fraudulent behavior, among other alleged misdeeds.  Busche sued the Debtor on November 15, 2013.  (*Id.* ¶ 16.)

In brief, Busche's complaint ("Complaint," ECF Doc. # 1) seeks to bar Grover from discharging his claim against her.  He claims that Grover "has a history of evasion, prevarication, concealment, serial transfer of assets, and abuse of process" (Compl. ¶ 44), including throughout the pendency of her bankruptcy proceeding.  He provides an overview of the facts leading up to the New York proceedings and a recapitulation of the New York action.  He notes in particular that, "[p]ursuant to . . . Debtor's failure to appear, [Busche's then-counsel] filed a motion for default judgment against both Debtor and Shah.  Debtor appeared *pro se* on the return date and was ordered to submit to an EBT [examination before trial], which was conducted in January 2017."  (*Id.* ¶ 70.)  He describes the referee's mandate thus: "On April 4, 2017, Justice Katz issued an order of reference to hear and report, sending the case to Referee Jeffrey A. Helewitz, before whom hearings were held on January 8–9, 2018 on the issues of appropriate division of asset*s* and assessment of damages against Shah based on his failure to serve an answer or appear."  (*Id.* ¶ 71.)  Busche then details Grover's alleged misdeeds in her Chapter 7 case, including (but are not limited to) misrepresenting her income in filings with this Court (*id.* ¶¶ 85, 107), misrepresenting the value of her assets (*id.* ¶ 86) and lying about various transfers of her assets which she made just before and during her bankruptcy case (*id.* ¶¶ 87–88, 90–102).  In Count I, Busche seeks an order denying the dischargeability of his claim under section 523(a)(2)(A) of the Code on the grounds that the underlying state court judgment is a debt which arose from "false pretenses, a false representation or actual fraud" because, he claims, the state

court found Grover liable "for claims of fraud and unjust enrichment." (*Id.* ¶¶ 111–112.)  He

also moves in Count II under section 523(a)(4), seeking denial of discharge on the grounds that

Grover committed "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or

larceny," and that the "Judgment awarded in the 2014 Litigation included claims of constructive

trust, unjust enrichment, and fraudulent misrepresentation" and "Busche obtained the Judgment

against the Debtor founded upon Debtor's acts of deceit and conversion." (*Id.* ¶¶ 115–118.)

Count III, also relying on the New York State court judgment, alleges that Grover's transfer of

Busche's money from a joint bank account to accounts under Grover's exclusive control

constitute "willful and malicious injury" to Busche. (*Id.* ¶¶ 121–23.)  Counts Four through Nine

rely on various portions of section 727 and seek denial of discharge based on Grover's alleged

malfeasance immediately prior to and during the bankruptcy, actions which are unrelated to the

state court judgment. (*Id.* ¶¶ 125–59.)  In sum, Busche seeks an order (1) denying Grover a

discharge pursuant to section 727 of the Code, (2) declaring the judgment debt Grover owes

Busche nondischargeable pursuant to section 524; (3) awarding Busche costs, including

attorneys' fees; and (4) awarding any additional relief the Court considers just, equitable, and

proper. (*Id.* ¶ 46.)

Grover filed an answer (ECF Doc. # 8), which is not relevant to the present motions or

order.

### C. Arguments

On December 4, 2024, this Court instructed the parties to brief the issue of the preclusive

effect, if any, of the judgments arising out of the New York State Court action. *See* Scheduling

Order (ECF Doc. # 24) ("In compliance with the Court's instructions at the December 4, 2024

Conference, Plaintiff-Creditor, James Busche ("Busche"), by his attorneys, efiled a Motion and

Memorandum of Law with respect to the preclusive effect of a NYS Judgment.").

Busche argues that the August 19, 2019 order in the New York State court action has

both *res judicata* and collateral estoppel effect.  First, he argues that the "default Judgment in the

NYS Action" (presumably meaning the August 19 judgment) "was a final judgment that has not

been vacated and can have *res judicata* or collateral estoppel effect in the Bankruptcy

proceedings, barring the Debtor from relitigating issues of fraud."  (Motion ¶ 47.)  He repeatedly

frames the judgment (perhaps judgments) in the New York action as a default judgment and

therefore a final decision on the merits, which precludes Grover from arguing any claim that was

actually litigated in the NYS action *and* any claim she *could have litigated* in that venue.  (*Id.* ¶¶

51–52.)  Busche's argument seems to be that Grover defaulted on *all* of Busche's claims against

her by failing to file an answer, and therefore all the claims Busche brought against her in state

court *and* all the claims that could have been litigated in that action are now decided and off the

table.  Busche also argues that, since Grover "willfully and deliberately refused to participate in

the litigation proceedings [in the state court] or abandoned them at some point, despite a full and

fair opportunity to participate," the state court judgment also has collateral estoppel effect.  (*Id.* ¶

55.)  He also argues that state court judgments on fraud charges can have a preclusive effect in

bankruptcy proceedings concerning dischargeability of a debt "where, as here, the state court

judgment was based on findings that are identical to the elements required for

nondischargeability under 11 U.S.C. 523," therefore, the NYS judgment awarding damages

provides the basis for this Court to deny dischargeability of Busche's claim against Grover.  (*Id.*

¶¶ 56, 58.)  Moreover, Busche claims that the burden of proof applied by the Referee accords

with that applied by federal courts under 11 U.S.C. § 523 (preponderance of the evidence),

further justifying the transferability of the NYS judgment to this action.  (*Id.* ¶ 66.)  He moves for a declaration that his claim is not dischargeable based on the preclusive effect of the New York State court judgment under 11 U.S.C. sections 523 and 727.  (*Id.* ¶¶ 67–71.)  This is a departure from his Complaint, in which he argues that his claim is nondischargeable under section 727 of the Code due to *unrelated* behavior by Grover—behavior related to her Chapter 7 proceeding, *not* related to the state court action between her and Busche.  (By contrast, his claim under section 523 in his Complaint is premised on the conduct underlying the state court action.)

The Department of Labor's motion concerns issues entirely separate from the state court action between Busche and Grover.  The DOL alleges that Grover made a number of transfers to insiders immediately prior to and during her bankruptcy and misrepresented her assets in court filings, among other misdeeds.  (DOL Motion at 6–8, 10–15.)  It also provides an overview of its case against Grover concerning wages Grover allegedly failed to pay to her former housekeeper Carina Cancon.  (*Id.* at 8–10.)  For reasons discussed *infra*, the DOL's Motion is entirely unrelated to this Court's request for briefing on the preclusive effect of the state court judgments, and the Court will not address the DOL's requests now, in the form in which they are presented.

Grover objected to Busche's motion.  She challenges Busche's assertion that default judgments have *res judicata* effect.  (Response ¶ 17.)  Her main argument is that at no time in the state court proceedings was the issue of fraud litigated or decided, and she describes the state court as having gone "out of its way on several occasions to make clear that it did not make a determination as to fraud."  (*Id.* ¶ 19.)  This, she claims, precludes the application of either *res judicata* or collateral estoppel.

In his Reply, Busche rehashes the same arguments he made in his Motion.

## II.   **LEGAL STANDARD**

*Res judicata*, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred." *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738).  "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth*., 32 F.3d 654, 657 (2d Cir. 1994) (internal citation omitted). Under New York law, *res judicata* "precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *Josey v. Goord*, 9 N.Y.3d 386, 849 (2007) (internal citation and quotation marks omitted).  *Res judicata* bars all matters that were, or could have been, litigated in the prior action. *Maharaj v. BankAmerica Corp*., 128 F.3d 94, 97 (2d Cir. 1997) (discussing New York law). Thus, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981).

Collateral estoppel, or issue preclusion, is distinct from *res judicata*.  "[U]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Burgos*, 14 F.3d at 789 (quoting *Allen*, 449 U.S. at 94).  As with *res judicata*, this Court applies the New York law of collateral estoppel when presented with a New York state

14

court judgment. *Id*. at 792. "Under New York law, the doctrine of collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.'" *Id*. (quoting *Ryan v. New York Tel. Co*., 62 N.Y.2d 494, 478 (1984)). "There are two requirements for the application of collateral estoppel to an issue: (1) '[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action' and (2) 'there must have been a full and fair opportunity to contest the decision now said to be controlling.'" *Id*. (quoting *Schwartz v. Public Adm'r*, 246 N.E.2d 725, 729 (1969)).

## III.    DISCUSSION

### A.  Court's Request for Briefing

Before addressing the bulk of Busche's Motion, the Court points out that the requested briefing was on a narrow topic. On December 4, 2024, this Court instructed the parties to brief the issue of the preclusive effect, if any, of the judgments arising out of a New York State court action ("NYS Action") between Busche and Grover which ran from 2014 through 2020. This request was captured in a scheduling order ("Order," ECF Doc. # 24) ("In compliance with the Court's instructions at the December 4, 2024 Conference, Plaintiff-Creditor, James Busche ('Busche'), by his attorneys, efiled a Motion and Memorandum of Law with respect to the preclusive effect of a NYS Judgment.").

Some of the arguments Busche makes go beyond the scope of the limited Order, and the DOL's Motion falls outside of the Order entirely.

Busche's request for relief on section 727(a) grounds in his Complaint is unrelated to the state court action. In his Complaint, he grounds his request for denial of discharge pursuant to

section 727(a) on Grover's behavior immediately preceding and during her bankruptcy case

(*e.g.*, allegedly transferring assets to her daughter, failing to list assets on her schedules,

improperly transferring of funds out of bank accounts during her bankruptcy, "mutilat[ing]" bank

statements, making "false oaths throughout the course of the Chapter 7 Case," and other similar

behavior, *see* Compl. ¶¶ 125–56).  In his present Motion for a declaratory judgment, Busche

seeks a declaration that his claim is not dischargeable under section 727 (he does not specify a

subsection) because of Grover's behavior in the New York State court case, *not* (just) her

behavior in connection with and during the bankruptcy.  (Motion ¶ 71.)  This is tantamount to

adding a claim to his Complaint without seeking permission to amend his Complaint.  The Court

will not permit him to sidestep the complaint amendment process, nor will the Court address this

argument for a declaratory judgment on section 727 grounds.

Moreover, Busche adds a non-specific request for related relief to his Motion which falls

outside the scope of the Court-ordered briefing.  He requests that the Court declare *all* claims

against Grover non-dischargeable under section 727 because of her "fraudulent and duplicitous

behavior throughout these Chapter 7 proceedings."  (*Id.* ¶ 73.)  While Grover's conduct in this

case may justify denial of discharge, the relief must be properly sought and, to the extent

necessary, follow an evidentiary hearing.  The expanded request for relief has nothing to do with

the state court action or judgments.  The Court therefore **DENIES** Busche's request for a

declaratory injunction holding that *all* of Grover's creditors' claims are nondischargeable.  The

Court may well reach this conclusion, but at a later date.

The DOL's Motion is entirely unrelated to the state court action between Busche and

Grover.  The DOL's case against Grover concerns unpaid wages Grover allegedly owes to her

former housekeeper Carina Canicon; the DOL also details Grover's alleged misbehavior

immediately preceding and during her pending Chapter 7 case.  The DOL was and is not

impacted by the years-old state court action between Busche and Grover, and the Court's

decision on the preclusive effect of the state court judgments does not affect the DOL's rights.

Nor, as noted above, does this Court's decision on the preclusive effect, if any, of the state court

judgments affect the rights of any creditor other than Busche.  The DOL's Motion, insofar as it is

filed in support of Busche's request for a ruling on section 727, is **DENIED**.  The DOL also

seems to attempt to circumvent the need to file a lift-stay motion by asking this Court for a

declaratory judgment allowing it to continue its ongoing case against Grover in a different court.

The DOL may file a lift-stay motion if it wishes to do so, but the Court will not rule on the

DOL's procedurally improper request for a declaratory judgment.  Similarly, the DOL may file a

complaint against Grover, but the Court will not prejudge the merits of such a claim the DOL

may bring.  The DOL's Motion is **DENIED** in whole.

This leaves just Busche's request for denial of discharge under 11 U.S.C. § 523.  (Busche

does not specify in this Motion which subsections of section 523 he relies upon, but since he

cites subsections (a)(2)(A), (a)(4), and (a)(6) in his Complaint, the Court assumes that he seeks a

declaratory judgment on the same grounds now.  (Compl. ¶¶ 110–24.))  This request is addressed

below.

### B.  Preclusive Effect of August 15, 2019 State Court Ruling on Section 523 Argument

#### 1.  No Default Judgment

It is true that, under New York law, default judgments have *res judicata* effect[5] and

sometimes have collateral estoppel effect.  *Santiago v. Lalani*, 681 N.Y.S.2d 577, 578 (1998)

---

[5]       The one case Grover cites to the contrary, *In re PCH Associates*, 949 F.2d 585 (2d Cir. 1991), concerns *federal* law on *res judicata*, not state law.  (Response ¶ 17.)  State law applies here, since the prior judgment at issue

("Under New York's transactional-analysis approach to *res judicata*, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred even if based upon different theories or if seeking a different remedy . . . .  The doctrine is applicable to a judgment taken by default which has not been vacated, as well as to defenses which were or could have been raised in the action.") (cleaned up); *In re Qiao Lin*, 576 B.R. 32, 49 (Bankr. E.D.N.Y. 2017) ("New York's collateral estoppel rule also accords preclusive effect to default judgments, under the appropriate circumstances.") (collecting cases).  The issue here is that *no default judgment was entered against Grover* in the state court proceedings against Grover.  Busche moved for entry of a default judgment against Grover, but she appeared on the return date, and while a default judgment was ultimately entered against her husband, no such judgment was entered against her; both of these facts strongly suggest that the August 15, 2019 judgment should *not* be viewed as a default judgment.  The Court is reluctant to read a judgment not expressly marked as a default judgment as such, not least because the method by which a default judgment can be challenged in New York State courts is distinct from the method of challenging other types of judgments: since no appeal lies from an order or judgment entered on default, the proper remedy is to move to vacate the default judgment and then appeal from an order denying the motion to vacate.  *See Montanaro v. Weichert*, 84 N.Y.S.3d 628, 629 (2018).  It would be unfair to litigants if judgments not explicitly indicated as default judgments could be treated as such, as it would affect the litigants' rights and subsequent possible courses of action—for example, it would cast doubt over the appropriate method by which to challenge the judgment.  There is no language in the state court orders against Grover which suggest that they

---

is a New York State court judgment.  The Court also notes that it was not able to find the other case Grover relied upon, which she cited as "*In re Scheduled Skyways, Inc.* 57 B.R. 724, 727 (Bankr. S.D.N.Y. 1986)."  (Response ¶ 17.)  No case with such a name appears on Westlaw in the Second Circuit, and the cited reporter information leads to *In re Amtol Corp.*, 57 B.R. 724 (Bankr. N.D. Ohio 1986).

are default judgments. Moreover, Busche's previous attorney already argued to Justice Katz that Grover had defaulted on the claims against her, and therefore requested that the referral to a referee be expanded to include the substance of Busche's claims against Grover. Justice Katz declined to so expand the referral, and seems to have rejected Busche's default argument. This Court will not be the first to declare the August 15, 2019 judgment to be a default judgment, especially not when the court which issued the judgment apparently declined to do so.

2. *Res Judicata* Does Not Apply

One essential point of bankruptcy law governs Busche's attempt to apply *res judicata* to the state court orders, which is that, "[d]ue to the unique nature of a dischargeability proceeding, the United States Supreme Court has held that *res judicata* is inapplicable in a denial of discharge proceeding."[6] *Rahman v. Seung Min Park (In re Seung Min Park)*, No. 09-78622-DTE, 2011 WL 1344495, at *4 n.3 (Bankr. E.D.N.Y. Apr. 8, 2011) (citing *Brown v. Felsen*, 442 U.S. 127, 138 (1979)). "This is because under 11 U.S.C. § 523(c)(1) bankruptcy courts have 'exclusive' jurisdiction over issues regarding section 523(a)(2), (a)(4), (a)(6) and (a)(15)"—the sections pursuant to which Busche moves in his Complaint. *Id.*; *see also Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 72 (S.D.N.Y. 1999) (rejecting the argument Busche makes here: "The Debtor argues that [creditor] is precluded under the principles of *res judicata* from proceeding with her nondischargeability claim under Section 523(a)(2) because she could have raised her fraud claim in the state court proceeding. However, because the bankruptcy court has exclusive rather than concurrent jurisdiction with the state courts over issues of Section 523(a)(2), (4), (6),

---

[6]    The cases Busche cites to the contrary (Motion ¶ 56–61) are not to the contrary. *In re Durso Supermarkets, Inc.* does not concern a nondischargeability motion, but rather a fraudulent transfer motion under section 548 of the Code. 193 B.R. 682, 695 (Bankr. S.D.N.Y. 1996). The rest concern the application of collateral estoppel, which can apply in nondischargeability proceedings, as opposed to *res judicata*. *See Grogan v. Garner*, 498 U.S. 279, 284 (1991) ("If the preponderance standard also governs the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action.").

and (15) non-dischargeability pursuant to Section 523(c) of the Bankruptcy Code and in keeping

with the holding of *Brown v. Felsen*, . . . *res judicata* is not available to bar [creditor] from now

proving that her debt was fraudulently incurred."). The Court therefore rejects Busche's

argument that *res judicata* applies to the state court judgment.

### 3.    Collateral Estoppel Does Not Apply

The New York State court judgment does not have collateral estoppel effect. Under New

York law, "collateral estoppel prevents a party from re-litigating an issue where (1) the identical

issue was decided in the prior action and is decisive of the present action, and (2) the party had a

full and fair opportunity to contest the prior determination." *In re Deutsch*, 575 B.R. 590, 598

(Bankr. S.D.N.Y. 2017) (internal citation omitted). While Grover may have had a full and fair

opportunity to litigate every step of the state court action and could have fought on the merits of

Busche's claims against her, the fact is that none of the recommendations, orders, or judgments

arising out of the New York State litigation *decided* the question of Grover's fraud. The

Referee's Report did not discuss liability and indeed explicitly noted that no finding of liability

had been identified by Justice Katz or the parties. The best reading of the Report's discussion of

the burden of proof is *not* that the Referee found fraud (or ruled on any other count) by a

preponderance of the evidence, as Busche suggests—rather, it is that the Referee took the

standard of proof from several of the counts in Busche's complaints and applied it to his decision

on damages. When asked to expand the scope of the referral and thereby interpret the Report to

encompass a decision on liability on several of Busche's counts against Grover, Justice Katz

expressly declined to do so. This Court sees no decision on any question of fraud in the state

court record such that collateral estoppel can apply. *See In re Bressler*, 387 B.R. 446, 457

(Bankr. S.D.N.Y. 2008) (declining to give collateral estoppel effect to state court judgment

finding violation of Section 487 of New York's Judiciary Law to dispose of question of debtor's malice under section 523 of the Code, since state court's relevant findings were limited to a bare statement that the debtor's conduct "violated Section 487" and the "judgment simply [did] not provide sufficient detail to support a finding that the issue of malice was decided . . . or that [the debtor] acted 'willfully and maliciously'"); *In re Moskowitz*, 310 B.R. 21, 31 (Bankr. E.D.N.Y. 2004) (refusing to apply collateral estoppel to state court judgment which did not "contain *specific findings* regarding the willfulness or malice of the Debtor" and where creditor moved in bankruptcy court for a finding of non-dischargeability pursuant to 11 U.S.C. section 523(a)(6)) (emphasis added); *In re Iulo*, 421 B.R. 49, 58 (Bankr. S.D.N.Y. 2009) (applying Connecticut law on collateral estoppel, which is similar to New York law, and finding it inapplicable to state court judgment on multiple causes of action, including fraud, because the "judgment does not specify on what count the judgment was rendered . . . .  The Court . . . cannot determine what count, if any, of the state-court complaint was the basis of the Judgment," so could not apply collateral estoppel) (collecting similar cases).

## IV.   **CONCLUSION**

For the foregoing reasons, both Busche's and the DOL's Motions are **DENIED**.

**IT IS SO ORDERED.**

Dated:      February 26, 2025
            New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge